## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

State Farm Mutual Automobile Insurance
Company,

Case No. 18-cv-2459 (ECW)

Plaintiff,

v.

**ORDER**

Tyler Havemeier, Nikki Blank, and
Jacob Gatzlaff,

Defendants.

This matter is before the Court on Plaintiff State Farm Mutual Automobile

Insurance Company's Motion for Certification for Interlocutory Appeal ("Motion").

(Dkt. 51.)  The parties have consented to the jurisdiction of this Court pursuant to 28

U.S.C. § 636 and Rule 73 of the Federal Rules of Civil Procedure.  (Dkts. 13, 14.)  The

Motion has been decided on the papers with no oral hearing.  For the reasons discussed

below, the Court denies the Motion.

## I.    FACTUAL AND PROCEDURAL HISTORY

**A.    June 27, 2016 Incident**

On August 22, 2018, Plaintiff State Farm Mutual Automobile Insurance Company

("State Farm") sought declaratory judgment in its favor with respect to State Farm's

obligation to provide insurance coverage benefits related to a policy of a vehicle of its

insured, Defendant Nikki Blank ("Blank"), driven by Defendant Tyler Havemeier

("Havemeier"), which hit Defendant Jacob Gatzlaff ("Gatzlaff") on June 27, 2016.  (*See generally* Dkt. 1.)

As part of the June 27, 2016 incident, Havemeier was arrested for leaving the scene of an accident and second-degree assault.  (Dkt. 38-1 at 24.)  Criminal charges were brought against Havemeier.  (Dkt. 31-1.)

## B.    Havemeier's *Alford* Plea

On December 10, 2016, Havemeier entered an *Alford* plea to Second Degree Assault, under Minn. Stat § 609.222, subd. 2.  (*Id.*)  During the *Alford* plea proceeding, the pending charges against Havemeier were addressed, including:

- Two counts of second-degree assault, which are felony offenses, punishable by up to ten years of incarceration and not more than a $20,000 fine.

- One count of third-degree assault, which is also a felony, punishable by up to five years of incarceration and not more than a $10,000 fine.

- One count of gross misdemeanor offense of traffic collision, failure to stop, punishable by up to one year of incarceration and not more than a $3,000 fine.

(Dkt. 31 at 4.)

With respect to pleading guilty as part of the *Alford* plea to Second Degree Assault, Havemeier admitted as follows:

Q     Were you in Brown County on June 27th of this year?

A.     Yes.

Q     And did you visit a restaurant or bar?

A     Yes.

Q     What was the name of it?

A       Outlaws Bar and Gril1.

Q       Yes.  Where is that located?

A       Right when you enter Springfield.

                              * * *

Q       Okay.  And was there somebody in the bar that was interacting with You?

A       More than one.

Q       Okay.  But was there a particular person with the initials of J.G.?

A       Yes.

Q       All right.  And did you after a point in time, exit the bar?

A       Yes.

Q       Did you go to your motor vehicle?

A       Yes.

Q       And did you begin to drive your motor vehicle out of the parking lot of Outlaws Bar and Grill?

A       Yes.

Q       Did this person, J.G., come out of the bar and approach your motor vehicle while it was moving?

A       Yes.

Q       And did the car end up striking him?

A       Meaning he got –

Q       Well, was there some kind of contact?

A       Yes.

3

Q       Okay.  Now, there was a passenger in your vehicle with the initials of
        N.G.; is that correct?

A       Yes.

Q       N.G. said that he was in the passenger side of your vehicle; is that
        true?  And he was looking out the window when this happened?

A       No, he said he was looking downward, at his phone.

Q       But he did give a statement to the police saying that he saw well, that
        he saw J.G. walk out of the restaurant; is that true?

A       Yes, but then he told me he was looking downward at his phone after
        he saw him walk out of the bar.

Q       But then he also told law enforcement that he felt the vehicle swerve
        towards J.G. and strike him; is that true?  That's what he said?  I can
        read it in the criminal complaint.

A       Yes, that's what he said.

Q       That's what he said.   Okay.   So he, essentially, said that you
        intentionally struck him?

A       Yes, that's what he said.

Q       All right.  Now you have the right to a trial where we'd bring in N.G.,
        and he'd have to testify, and we have the right to question him, but
        you understand that if a jury believes him and not our witnesses or
        you, that there would be a conviction, highly likely there would be a
        conviction for a second degree assault; do you understand that?

A       Yes.

Q       So do you believe that if a jury believed N.G. and none of our
        witnesses, that a jury would convict you?

A       As of being guilty?

Q       Yes.

A       Yes.

Q      All right.  And you'd rather take the offer than risk a jury trial?

A.     Yes.

Q      All right.  And for that reason, are you pleading guilty today?

A      Yes.

(Dkt. 31-1 at 7-11.)  Havemeier also acknowledged that he left the scene and that the

evidence showed that Gatzlaff had a broken bone as a result of the car accident.  (*Id.* at

12.)

     In discussing the *Alford* plea, Brown County District Court Judge Robert A.

Docherty and Havemeier had the following relevant exchange:

> The Court:  Mr. Havemeier, what we're talking about with an *Alford* plea is
> this: It's a situation where you do not agree with the statements or the State's
> evidence; in fact, you dispute that, but you're willing to plead guilty in order
> to avoid the possibility that a jury, at trial, might convict you of something
> more serious than what you're pleading guilty to; do you understand that?
>
> The Defendant:  Yes.
>
> The Court:  And do you understand that with an *Alford* plea, it's the same as
> if you took the witness stand and said I intentionally drove over this guy, and
> I tried to hurt him, it's got the same effect; do you understand that?
>
> The Defendant:  Yes.
>
> THE COURT:  Okay.  In reviewing the complaint, there's a statement here
> from somebody whose initials are E. E.  E. E. said he saw what happened.
> He said that you and J.G. got into some sort of argument in the bar.  J.G. went
> outside when you left.  E.E. tried to hold J.G. back, and E.E. said he saw the
> car pull forward to leave the parking lot but then swerved at J.G.  E.E. said,
> "The dude f-ing swerved at him.  The dude turned to make sure he hit him."
> Do you agree that if E.E. were called as a witness at trial and testified to that
> and a jury believed what he said and disbelieved what you and your witnesses
> said, the jury would likely convict you or find you guilty of the assault ?

* * *

5

THE DEFENDANT:  Yes.

(*Id.* at 12-14.)

Judge Docherty then accepted the plea and sentenced Havemeier.  As part of the *Alford* plea, Havemeier acknowledged that as a result of accepting the plea related to the felony count, he would face certain collateral consequences, such as being unable to own a firearm.  (*Id.* at 8.)

On or about June 1, 2018, Gatzlaff commenced a lawsuit entitled "*Jacob Gatzlaff v. Tyler Douglas Havemeier*" in Brown County District Court (hereinafter the "State Action") in which Gatzlaff alleges that Havemeier is liable to him for damages resulting from injuries sustained in the June 27, 2016 incident.  (Dkt. 1 ¶ 13; Dkt. 6 ¶ 7.)  The State Action was tendered to State Farm to provide defense and indemnity to Havemeier.  (Dkt. 1 ¶ 14; Dkt. 6 ¶ 7.)  The State Action is pending.

## C.    **Insurance Policy**

State Farm asserts that Havemeier intentionally swerved the vehicle towards Gatzlaff and intentionally caused the vehicle to strike Gatzlaff, resulting in injuries, and thereby seeks a declaratory judgment from this Court that it has no duty to defend and indemnify Havemeier in the State Action because of the insurance policy's exclusions for an insured who intentionally causes bodily injury.  (Dkt. 1 at 3-4.)  The policy at issue ("Policy") states, "[*w*]*e* will pay: a. damages an ***insured*** becomes legally liable to pay because of: (1) ***bodily injury.***"  (Dkt. 31-2 at 13 (emphasis in original).)  The parties agree that Havemeier fits in the definition of "insured" and Gatzlaff suffered bodily injury.  (Dkt. 32 at 4.)

The Policy also contains the following exclusion: "THERE IS NO COVERAGE FOR AN **INSURED**: 1. WHO INTENTIONALLY CAUSES **BODILY INJURY** OR DAMAGE TO PROPERTY." (Dkt. 31-2 at 15 (emphasis in original).)

**D.      Order on Summary Judgment**

State Farm and Gatzlaff both moved for summary judgment. (Dkts 33, 35.) As part of its argument on summary judgment, State Farm relied on the vehicle's insurance policy. As stated previously, the Policy states in relevant part: "[t]here is no coverage for an insured: 1. Who *intentionally* causes bodily injury . . . ." (Dkt. 31-2 at 15 (emphasis added).) As noted, in the aftermath of the incident with Gatzlaff, Havemeier submitted to an *Alford* plea for Second Degree Assault under Minn. Stat § 609.222, subd. 2. (Dkt. 31-1.) State Farm argued at summary judgment that an *Alford* plea is the same as a conventional guilty plea and carries the same collateral consequences as a guilty plea. (Dkt. 32 at 12.) According to State Farm, by accepting Havemeier's plea, the Brown County District Court essentially litigated the issue of intent, as that court conclusively determined that Havemeier operated the vehicle with intent to cause Gatzlaff bodily injury. (*Id.* at 13-14.) As to this argument, the Court found in relevant part as follows:

> The collateral consequences of an *Alford* plea in a civil trial was a matter of first impression for the Minnesota Supreme Court in *Doe 136 v. Liebsch*, 872 N.W.2d 875 (Minn. 2015). The Minnesota Supreme Court's analysis focused on the balance between the probative value of the *Alford* plea and the prejudicial risk in terms of its admission into evidence at trial. *Id.* at 881-82. Whereas a "conventional guilty plea, by contrast, requires a defendant to admit the conduct to which he or she is accused of committing," the underlying trial court in *Liebs[c]h* concluded "that the only real admission by Liebsch is that a **jury might find him guilty** if it chose to find credible the testimony of witnesses which was never presented to it." *Id.* at 881 (cleaned up) (citation omitted) (emphasis added). The Minnesota Supreme

Court held that the trial court did not abuse its discretion by excluding the *Alford* plea from evidence. *Id.* at 882. The court reasoned that "Liebs[c]h's *Alford* plea **included no admission of facts establishing guilt**, and therefore it lacked the probative value typically found in a conventional guilty plea." *Id*. (emphasis added). Thus, the Minnesota Supreme Court would not always view nor treat an *Alford* plea as it would a conventional guilty plea. Other courts from outside Minnesota have held similarly with respect to the effect of an *Alford* plea. *See, e.g., Barker v. Ameriprise Auto & Home Ins. Agency, Inc.*, 905 F. Supp. 2d 1214, 1219 (W.D. Wash. 2012) ("Acknowledgement of the *existence* of evidence is not an admission as to the *truth* of that evidence."); *Fleck v. State Farm Ins. Cos.*, No. 89-L-14-070,1990 WL 124648 at *2 (Ohio Ct. App. Aug. 24, 1990) ("Such a plea does not constitute an admission of guilty, but rather that the accused is willing to waive a trial and accept the consequences of the plea. It, however, does not act as an admission of the plea . . . [t]herefore, appellant's guilty plea, by way of a qualified *Alford* plea, operates in the same fashion as a *nolo contendere* plea for the purposes in a subsequent civil action.").

The instant issue is similar to that addressed by the Minnesota Court of Appeals in *Johnson v. West Bend Mutual Insurance Co.*, A17-1957, 2018 WL 6596270 (Minn. Ct. App. 2018). *Johnson* involved an insurance company seeking summary judgment with respect to an insurance policy covering an in-home daycare, arguing that an injury to a child ("D.J.") was excluded under the policy's criminal-act exclusion based on an *Alford* plea for gross misdemeanor child neglect by the day-care provider Jewel Plocienik ("Plocienik"). *Id*. at *1-2. While the *Alford* plea was admitted into evidence, the Minnesota Court of Appeals of Minnesota overturned summary judgment for the insurance company. *Id*. at *2. The court stated that "[d]uring her plea colloquy Plocienik denied harming D.J., acknowledging only that the state's evidence would be sufficient to convict her." *Id.* at *8. The Court reasoned that the *Alford* plea showed that the child's injuries led to a criminal conviction but not that the injuries arose from a criminal act. *Id*. at *9 ("Without a clearer admission of her conduct or of her guilt, or additional evidence from some other source, Plocienik's equivocal plea statements leave open the possibility that D.J. was injured by negligent supervision that did not amount to a criminal act or involve a statutory violation.").

In this case, the record and transcript of Havemeier's *Alford* plea must be assessed to determine what Havemeier definitively admitted to during the proceeding. During the course of his plea, Havemeier admitted to visiting the Bar, making "some kind of contact" against Gatzlaff with his car, and driving away. (Dkt. 31-1 at 9, 10, 13.) However, Havemeier himself never

admitted to intentionally striking Gatzlaff.  Like in *Johnson*, Havemeier only admitted that if the jury did not believe him or any of his witnesses and believed Goblirsch and Erickson's testimony of the events at issue that a jury would be likely to find him guilty.  (*Id.* at 11-12, 14-15.)  There was no assertion in the plea that he agreed to the witnesses' characterization of the events.

During the proceeding, Havemeier agreed to several statements made by the Court that convolute his plea.  The transcript shows the following exchange:

> The Court:    Mr. Havemeier, what we're talking about with an *Alford* plea is this: It's a situation **where you do not agree with the statements or the State's evidence; in fact, you dispute that, but you're willing to plead guilty in order to avoid the possibility that a jury, at trial, might convict you of something more serious** than what you're pleading guilty to; do you understand that?
>
> The Defendant:  Yes.
>
> The Court:    And do you understand that with an *Alford* plea, it's the same as if you took the witness stand and said I intentionally drove over this guy, and I tried to hurt him, it's got the same effect; do you understand that?
>
> The Defendant:  Yes.

(*Id.* at 13-14 (emphasis added.))

In the course of this one exchange, Havemeier both asserted his innocence, disputed the evidence against him, and appeared to accept that his plea would have the same effect as him stating on the stand that he intentionally acted to injure Gatzlaff.  Because of the conflicting transcript, Havemeier's *Alford* plea cannot establish that State Farm has met its initial burden to show the absence of genuine issues of material fact as to whether Gatzlaff's injury arose from an intentional act.  The summary judgment record might establish as a matter of law that Gatzlaff's injuries resulted in a criminal conviction, but not that Havemeier intended to harm Gatzlaff.

(Dkt. 50 at 13-17 (footnote omitted and emphasis in original).)

With respect to State Farm's argument regarding collateral estoppel, the Court found within its discretion that collateral estoppel does not apply to the *Alford* plea as to

the issue of intent in the present case because Gatzlaff was not a party in the criminal

matter nor in privity with Havemeier and because Gatzlaff was not given a full and fair

opportunity to be heard on the adjudicated issue with respect to the *Alford* plea in

Havemeier's criminal case.  (Dkt. 50 at 17-20.)

**E.      Present Motion for Certification**

In the present Motion, State Farm moves this Court to certify the Court's Order

denying its motion for summary judgment for interlocutory appeal to the Eighth Circuit

Court of Appeals:

> The determination of whether Havemeier intended to injure Gatzlaff is
> dispositive of this matter.  The Court's denial [of] State Farm's Motion for
> Summary Judgment, by misapplying procedural law and misinterpreting
> substantive law, precludes any reasonable resolution of this case because the
> issue of Havemeier's intent to injure remains open.
>
> As a result, State Farm seeks to have the issue of Havemeier's intent resolved
> with finality prior to the trial of the state court case proceeding to trial through
> an immediate appeal.  A final decision on the issue of Havemeier's intent
> will influence the course of the two lawsuits, including settlement, and trial
> in state court and a trial in federal court.  Judicial economy in both the federal
> and state courts will be achieved via a final decision on the issue of
> Havemeier's intent, as that determination will result in a final determination
> as to the coverage, if any, available under State Farm's policy.  The decision
> will likely result in either the dismissal of both actions or settlement of the
> state court action.  Indeed, the state court trial is far less likely to occur once
> a conclusive decision on Havemeier's intent to injure is made.  An immediate
> appeal and final decision on intent to injure **may significantly advance the
> ultimate termination of this case**, in turn, saving the parties, the state court
> and the Federal court considerable time and expense.  The issue of
> Havemeier's intent and its significant bearing on the resolution of the case is
> precisely the type of question worthy of an immediate appeal.

(Dkt. 52 at 2-3 (emphasis added).)

## II.   <u>LEGAL STANDARD</u>

The purpose of 28 U.S.C. § 1292(b) is "to provide interlocutory appeal in exceptional cases in order to avoid protracted and expensive litigation." *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979) (citation omitted); *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994).  Section 1292(b) provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

"'Section 1292(b) establishes three criteria for certification: the district court must be of the opinion that (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation.'" *Union Cnty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *White*, 43 F.3d at 377) (internal quotations omitted).  The requirements of § 1292(b) are jurisdictional.  *See White*, 43 F.3d at 376 (citation omitted).

"Permission to allow interlocutory appeals" pursuant to certification under § 1292(b) "should be granted sparingly and with discrimination." *Union Cnty., Iowa*, 525 F.3d at 646 (marks and citation omitted).  "[T]he movant **bears the heavy burden** of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *See White*, 43 F.3d at 376 (emphasis added) (citation omitted).  Indeed,

§ 1292(b) "'should and will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases.'" *Id.* (quoting S. Rep. No. 2434, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260). Further, it has "long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants." *Id.* (quoting *Control Data Corp. v. Int'l Bus. Machs. Corp.*, 421 F.2d 323, 325 (8th Cir. 1970)). "Even if the requirements are satisfied, [the Eighth Circuit] may deny appeal for any reason." *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, 557 F. App'x 618, 619 (8th Cir. 2014) (unpublished) (citing *Union Cnty., Iowa*, 525 F.3d at 646).

Given this standard, the Court proceeds to analyzing the merits of State Farm's Motion.

## III.   ANALYSIS

### A.   Controlling Question of Law

A question of law is "controlling" if "reversal of the district court's order would terminate the action," or "if its resolution is quite likely to affect the further course of the litigation, even if it not certain to do so." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., Inc.*, No. 10-4948 (JRT/TNL), 2015 WL 4898662, at *2 (D. Minn. Aug. 17, 2015) (cleaned up); *see also Pederson v. Trump*, No. CV 19-2735 (JRT/HB), 2020 WL 4288316, at *2 (D. Minn. July 26, 2020) (same) (citation omitted). A controlling legal question "of the type referred to in § 1292(b) contrasts with a matter for the discretion of the trial court." *White*, 43 F.3d at 377 (marks and citation omitted).

State Farm argues that in this case, the issue of Havemeier's intent is a controlling question of law, because if this Court erred in denying State Farm's summary judgment motion, such an error will constitute reversible error since coverage hinges on its position that Havemeier's intent to injure Gatzlaff is conclusively resolved, as a matter of law, by virtue of his *Alford* plea to Second Degree Assault.  (Dkt. 52 at 6.)  Gatzlaff argues that the issue of intent is an issue of fact and therefore not appropriate for an interlocutory appeal.

While State Farm disagrees with this Court's ruling, State Farm provides no authority that an *Alford* plea constitutes an automatic admission as to the intent to injury with respect to a civil action.  To the contrary, State Farm, citing to *State v. Theis*, 742 N.W.2d 643, 648-49 (Minn. 2007), acknowledges "that trial courts must carefully scrutinize the factual basis for an *Alford* plea in order to remedy the conflict inherent in such pleas where a defendant is allowed to plead guilty to a crime **while maintaining his innocence**."  (Dkt. 52 at 7-8 (emphasis added).)  In other words, State Farm concedes that a court must examine the underlying *Alford* plea made by a criminal defendant, like Havemeier, to determine whether there were admissions as to intent given the nature of the plea.  Indeed, the Minnesota Supreme Court in *Theis* noted in its examination of the available jurisprudence that "cases reflect **that careful scrutiny of the factual basis for the plea is necessary** within the context of an *Alford* plea because of the **inherent conflict in pleading guilty while maintaining innocence**."  742 N.W.2d at 648-49 (emphasis added).  According to the Minnesota Supreme Court, the linchpin of an *Alford* plea is that a defendant, despite maintaining his innocence, agrees that evidence the State

**is likely** to offer at trial is sufficient to convict.  *Id.* at 649.  Similarly, the Minnesota

Supreme Court in *Liebsch* concluded "that **the only real admission** by Liebsch is that a

jury **might find him guilty** if it chose to find credible the testimony of witnesses which

was never presented to it."  *Id.* at 881 (cleaned up) (emphasis added).  The Minnesota

Supreme Court held that the trial court did not abuse its discretion by excluding the

*Alford* plea from evidence.  *Id.* at 882.  The court reasoned that "Liebsch's Alford plea

**included no admission of facts establishing guilt, and therefore it lacked the**

**probative value typically found in a conventional guilty plea**."  *Id.* (emphasis added).

In other words, the mere fact of an *Alford* plea in and of itself is not enough to establish

intent as to the present civil action; instead the factual circumstances must be examined to

determine whether there were any admissions of facts with respect to Havemeier's intent

to injure Gatzlaff.  State Farm presents no substantial relevant legal authority to the

contrary.

To the extent that State Farm is arguing that this Court misinterpreted the facts

with respect to Havemeier's plea in its analysis, "[i]t is clear that a 'controlling question

of law' means that only 'pure' questions of law may be certified for interlocutory appeal.

Mixed questions of law and fact are inappropriate for such a proceeding."  *Minnesota ex*

*rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co.*, No. CV 08-6385 (PAM/LIB), 2010 WL

11537448, at *2 (D. Minn. Sept. 30, 2010) (citations omitted); *see also Employers Reins.*

*Corp. v. Mass. Mut. Life Ins. Co.*, No. 06-0188-CV-W-FJG, 2008 WL 4693513, at *2

(W.D. Mo. Oct. 23, 2008) (citing *S.B.L. By and Through T.B. v. Evans*, 80 F.3d 307, 311

(8th Cir. 1996) (deciding what legal standard the court should apply in order to hold an

institution liable under Title IX was undoubtedly a question of law)) ("A question of law does not refer to an issue that is merely free from factual dispute, but rather it refers to matters of pure law, such as determining the meaning of a statute or regulation or deciding the appropriate legal standard to apply."), *aff'd sub nom. Employers Reins. Co. v. Mass. Mut. Life Ins. Co.*, 654 F.3d 782 (8th Cir. 2011).

State Farm argues that there is a substantial ground for difference of opinion as to the Court's conclusion that an *Alford* plea does not have the same collateral consequences as a traditional guilty plea under Minnesota law.  (Dkt. 52 at 11.)  Although State Farm raised this issue in connection with the second requirement for interlocutory appeal, the Court considers State Farm's collateral estoppel question in connection with the first requirement of a controlling question of law because the Eighth Circuit has suggested that controlling questions of law are distinguished from matters "for the discretion of the trial court."  *See White*, 43 F.3d at 377 (cleaned up).  To the extent that the issue of intent is the same in both the criminal and present proceeding and there was final judgment, State Farm could prevail on collateral estoppel to the extent the requirements of privity and whether an estopped party was given a full and fair opportunity to be heard on the adjudicated issue can be met or bypassed merely based on an *Alford* plea.[1]  However,

---

[1]     Under Minnesota law, collateral estoppel may be applied when:

> (1) the issue was identical to one in prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*State v. Lemmer*, 736 N.W.2d 650, 659 (Minn. 2007).

even if collateral estoppel were available, whether to apply the doctrine is discretionary with the district court. *See Pope Cnty. Bd. of Comm'rs v. Pryzmus*, 682 N.W.2d 666, 669 (Minn. Ct. App. 2004) (citation omitted), *rev. denied* (Minn. Sept. 29, 2004). Since the application of collateral estoppel is discretionary, it does not constitute a controlling question of law necessary for certification under § 1292(b). *See White*, 43 F.3d at 377 (finding that a controlling legal question "of the type referred to in § 1292(b) contrasts with a matter for the discretion of the trial court").

In sum, State Farm has not met the "controlling question of law" requirement because it identifies no authority finding that the fact of an *Alford* plea, without any consideration of the circumstances or admissions made during the plea, establishes intent; because whether Havemeier's *Alford* plea established his intent to cause injury is a mixed question of law and fact; and because the issue of collateral estoppel is within the Court's discretion.

## B.    Substantial Ground for Difference of Opinion

The Court also addresses whether State Farm has met the second requirement for interlocutory appeal. As to whether a ground for difference of opinion is substantial, the Eighth Circuit has held that the "[i]dentification of 'a sufficient number of conflicting and contradictory opinions'" can be sufficient to meet this element. *White*, 43 F.3d at 378. "[A] dearth of cases does not constitute substantial ground for difference of opinion." *Union Cnty., Iowa*, 525 F.3d at 647 (cleaned up). This element can be met where a

difference of opinion exists between the district courts of the controlling circuit.[2] *See In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 18-CV-0939 (WMW/DTS), 2020 WL 3530624, at *5 (D. Minn. June 30, 2020) (citing *Graham v. Hubbs Mach. & Mfg., Inc.*, 49 F. Supp. 3d 600, 612 (E.D. Mo. 2014)).  Moreover, with respect to questions on Minnesota law, such as those raised on summary judgment in the present Motion, the Court must look to a conflict in Minnesota law, and a mere dearth in cases in Minnesota is not sufficient to grant an interlocutory appeal.  *See Union Cnty., Iowa*, 525 F.3d at 647 ("While identification of 'a sufficient number of conflicting and contradictory opinions' would provide substantial ground for disagreement, the County offered no such Iowa opinions, statutes or rules, and a dearth of cases does not constitute substantial ground for difference of opinion.  Accordingly, section 1292(b)'s second criterion for certification has not been satisfied.") (cleaned up).

State Farm asserts that this Court's conclusion that Havemeier's sworn testimony at his plea hearing was equivocal (with respect to his intent to injure) presents substantial ground for difference of opinion.  (Dkt. 52 at 9.)  As discussed in Section III.A, State Farm has not identified any cases suggesting that the fact of Havemeier's *Alford* plea was controlling as to intent or that the circumstances of Havemeier's *Alford* plea established his intent to cause bodily injury as a matter of law.  State Farm further argues the Court's reliance on *Johnson v. West Bend Mutual Insurance Company* also presents a substantial

---

[2]     The Court notes that it is unclear as to whether a circuit split is sufficient to meet the second prong under § 1292(b).  *Compare In re Polaris Mktg.*, 2020 WL 3530624, at *5, *with Pederson*, 2020 WL 4288316, at *2.

ground for difference of opinion.  (Dkt. 52 at 9-11.)  State Farm does not assert that other

cases have held contrary with respect to *Johnson*'s finding that an *Alford* plea does not

necessarily have a binding effect in the insurance coverage context.  *See* 2018 WL

6596270 at *9 ("Without a clearer admission of her conduct or of her guilt, or additional

evidence from some other source, Plocienik's equivocal plea statements leave open the

possibility that D.J. was injured by negligent supervision that did not amount to a

criminal act or involve a statutory violation.").  Instead, State Farm takes issue with this

Court's reliance on *Johnson* because it asserts that the facts in that case are

distinguishable from those present as to Havemeier and his *Alford* plea.  It appears that

State Farm would have this Court conclude that "a substantial ground for difference of

opinion" exists simply because State Farm disagrees with the Order on Summary

Judgment, as distinguished from a difference of judicial opinion expressed by another

court with respect to *Johnson*.  State Farm's disagreement with the Court's conclusion

does not satisfy the "substantial ground for difference of opinion" requirement.[3]  *See*

*Same Day Surgery Ctrs., L.L.C. v. Mont. Reg'l Orthopedics, L.L.C.*, No. CIV.02-

1811(JRT/FLN), 2003 WL 1565942, at *3 (D. Minn. Mar. 4, 2003) ("The fact that

---

[3]       State Farm also argues that the Court improperly considered *Johnson* pursuant to
Minn. Stat. § 480A.08 because *Johnson* is an unpublished Minnesota Court of Appeals
decision.  (Dkt. 52 at 17.)  While unpublished opinions of the Minnesota Court of
Appeals, such as *Johnson*, are not precedential, the Court views *Johnson* as persuasive
authority, particularly as it is consistent with the Minnesota Supreme Court's opinions in
*Theis* and *Liebsch*.  *See Club Vista Fin. Servs., L.L.C. v. Maslon, Edelman, Borman &
Brand, LLP*, No. 10-CV-3174 SRN/JJG, 2011 WL 4947629, at *15 (D. Minn. Oct. 18,
2011).  This is certainly not a basis for an interlocutory appeal especially since Plaintiff
cites to no legal authority to demonstrate a substantial ground for a difference in opinion
exists with respect to the legal holdings in these cases.

another court might decide the issue differently, or that the litigant disagrees with the Court's decision, however, does not satisfy the statutory requirement for a substantial ground for difference of opinion."). If a party's disagreement with a Court's decision were sufficient, then an interlocutory appeal would be allowed in every instance where it was sought.

While the Court has already found that State Farm's collateral estoppel argument does not meet the first element of § 1292(b), it also concludes that State Farm has failed to meet its burden with respect to the second element of § 1292(b). As discussed in Section III.A, State Farm also takes issue with the Court's conclusion that Havemeier's *Alford* plea does not collaterally estop Gatzlaff from seeking coverage under the Policy, and seemingly wants the Court to ignore binding Minnesota Supreme Court precedent, namely, *Illinois Farmers Insurance Company v. Reed*.[4] (Dkt. 52 at 11-12.) Indeed, the Court relied on *Reed* in its Order on Summary Judgment relating to its finding on collateral estoppel:

> More importantly, the Minnesota Supreme Court found in *Illinois Farmers Insurance Co. v. Reed*, 662 N.W.2d 529 (Minn. 2003), that an insured's criminal conviction (outside of convictions where the defendant sought to profit from their crime) cannot be used an insurance company to collaterally estop the victim of the crime from litigating in a subsequent civil action the

---

[4]     State Farm asserts that the Federal Rules of Evidence governs the admissibility of evidence in this diversity case, and therefore has some effect on how the Court examines the issue of collateral estoppel with respect to an *Alford* plea. (Dkt. 52 at 11-13.) However, Minnesota law governs the effect of a prior Minnesota state court judgment. *See Peschong v. Children's Healthcare*, 917 F.3d 656, 658 (8th Cir. 2019) (applying Minnesota law on collateral estoppel, which precludes the re-litigation of a legal or factual issue that was actually litigated in a prior proceeding and was essential to the judgment rendered) (citation omitted). That said, the Court has made no ruling with respect to the admissibility to the *Alford* plea at trial.

19

issue of the insured's intent to determine whether the insured's homeowner's insurance policy provides coverage for an incident. In *Reed*, the appellants' young child was injured after his babysitter, Reed, violently shook him. *See* 662 N.W.2d at 530. Reed was convicted as a part of a bench trial of felony first-degree assault and felony malicious punishment of a child for her actions. *Id.* In a subsequent civil action, Reed's insurer refused to indemnify her based on the policy's intentional-act exclusion. *Id.* at 531. Reed's insurer claimed that Reed's criminal convictions collaterally estopped the appellants from relitigating the issue of whether Reed intended to injure their child. *Id.* at 533. However, the Minnesota Supreme Court rejected this argument, holding that "an insurer may not use an insured's criminal conviction to collaterally estop a subsequent civil suit brought by a third-party crime victim based on the intentional act exclusion within the policy." *Id.* at 534. In rendering this holding, the court found it important that the victim did not have the chance to present their case as part of the criminal prosecution, as the only parties were the state and Reed. *Id.* at 533. Similarly, in this case the only parties to the plea as part of the criminal action were the State and Havemeier, and Gatzlaff obviously did not have any opportunity to present his case or otherwise be heard. Ultimately, the Court finds that if collateral estoppel cannot apply to a criminal conviction as part of trial, then *a fortiori,* it cannot apply to an *Alford* plea where Havemeier pleaded guilty to avoid possible harsher penalties.

(Dkt. 50 at 19-20.)

According to State Farm, the Minnesota Supreme Court erred in *Reed* because it "failed to address how or why the injured party in that case lacked privity with the criminal insured so as to preclude collateral estoppel." (Dkt. 52 at 14.) State Farm does not cite to any Minnesota case calling into question the decision in *Reed* as to collateral estoppel, and instead only cites to one subsequent Minnesota Court of Appeals case, *Fain v. Andersen*, 816 N.W.2d 696 (Minn. Ct. App. 2012), in support of its position. (*Id.* at 11-16.) State Farm's reliance on *Fain* is unpersuasive because *Fain* distinguishes itself from the holding in *Reed*:

In *Ill. Farmers Ins. Co. v. Reed*, parents of an injured child sued their son's daycare provider, who had been convicted of assault and malicious

punishment of a child based on an incident in which the son suffered a severe brain injury. 662 N.W.2d 529, 530 (Minn. 2003). Citing *Thompson*, the daycare provider's insurer argued that the homeowner's policy did not cover intentional acts and that therefore the daycare provider's conviction should collaterally estop any argument by the injured child's parents that the insurer had a duty to indemnify for the assault. *Id.* at 530-31. The supreme court disagreed and held that the insurer could not use the daycare provider's criminal conviction to collaterally estop the parents from claiming coverage under the daycare provider's homeowner's insurance policy. *Id.* at 534. The court reasoned that the parents of the injured child were not parties in the criminal proceeding and therefore had not been given a full and fair opportunity to be heard in the criminal case on the issues relevant to the insurance policy's intentional-acts exclusion. *Id.*

In reaching its holding in *Reed*, the supreme court discussed approvingly this court's analysis of a certified question regarding whether a criminal conviction can be used for collateral estoppel purposes in a later civil case. *Id.* at 533. We concluded that the collateral estoppel effect of a conviction is not limited to situations in which a criminal defendant seeks to profit from the crime; instead, the collateral estoppel effect of a criminal judgment should be determined in the same manner and under the same criteria as any other judgment. *Ill. Farmers Ins. Co. v. Reed*, 647 N.W.2d 553, 564 (Minn. App. 2002), *rev'd on other grounds*, 662 N.W.2d 529 (Minn. 2003). In so concluding, we relied on the Restatement (Second) of Judgments, which provides:

> At an earlier period in the development of res judicata doctrine, the "mutuality" requirement was an obstacle to applying issue preclusion in favor of such a third party. That is, since the third party would not have been bound in his civil action if the prosecution had resulted in an acquittal, under the mutuality rule it would follow that the third party could not take advantage of the issue determined in a conviction. However, long before the mutuality rule was repudiated in civil cases, well-reasoned decisions had extended the rule of preclusion to operate in favor of third persons where the first action is criminal and the second is civil.

*Id.* at 565 (quoting Restatement (Second) of Judgments § 85 cmt. e (1982)).

The Restatement further provides:

21

> [W]here the person harmed by the conduct that was criminally prosecuted then brings an action for civil redress against the wrongdoer for the consequences of the conduct . . . it is now settled that preclusion should apply. Restatement (Second) of Judgments § 85 cmt. e.  In *Reed*, the supreme court observed that section 85, comment e, did not address the fact situation presented there, as the parties sought to be estopped were the crime victims in pursuit of insurance coverage against the "wrongdoer's insurance company."  662 N.W.2d at 533.
>
> In the present case, **the estopped party is the same person who was convicted in the criminal trial**.  Additionally, the insurance-coverage issues present in *Reed* are not present here.  Collateral estoppel is available in this case.  A criminal conviction can be used in a subsequent civil action to preclude argument by the convicted party on issues conclusively proved in the criminal trial.

*Fain*, 816 N.W.2d at 700-01 (emphasis added).

It is clear that *Reed*, and not *Fain*, applies to the facts in this case dealing with a declaratory judgment affecting the rights of the injured third-party (Gatzlaff), as opposed to an action brought by Havemeier.  While State Farm cites to several decisions **outside of Minnesota** (Dkt. 52 at 15-16), even to the extent that these cases amount to a substantial difference in collateral estoppel doctrine with the decision in *Reed*, that does not constitute a substantial difference in opinion necessary for the certification of interlocutory appeal for the purposes of §1292(b).  *See Union Cnty., Iowa*, 525 F.3d at 647.

For all of the reasons stated above, State Farm has failed to meet its burden as to the second element of § 1292(b).[5]  Therefore, the Court denies the motion for certification for interlocutory appeal.

## IV.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.     State Farm Mutual Automobile Insurance Company's Motion for Certification for Interlocutory Appeal (Dkt. 51) is **DENIED**.

2.     The Court will set this matter for a bench trial held by Zoom.  The parties are ordered to meet and confer to discuss the length of time they believe they will need for the trial, along with any other issues relating to the format that they wish to raise with the Court.  No later than **March 19, 2021**, the parties shall file a joint status report to the Court addressing issues relating to the format of the trial.  The parties should also state in the joint status report whether they request a second settlement conference in front of U.S. Magistrate Judge Hildy Bowbeer before trial.

DATED: March 5, 2021                         *s/Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             United States Magistrate Judge

---

[5]     Given that State Farm has not satisfied the first or second elements of §1292(b), the Court does not reach whether an immediate appeal would materially advance the ultimate termination of the litigation.

23