UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | Case No. 18-cv-2459 (ECW) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER** |
| Tyler Havemeier, Nikki Blank, and Jacob Gatzlaff, | |
| Defendants. | |

The above-entitled matter came before the Court for a bench trial, on June 14, 2021, via Zoom for Government.  The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636 and Rule 73 of the Federal Rules of Civil Procedure.  (Dkts. 13, 14.)  Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") and Defendant Jacob Gatzlaff each seek a declaratory judgment in their favor with respect to State Farm's obligation to provide insurance coverage benefits related to a policy of a vehicle of its insured, Defendant Nikki Blank, driven by Defendant Tyler Havemeier, which hit Gatzlaff on June 27, 2016.

Attorney Anthony J. Kane appeared on behalf of Plaintiff State Farm.  Attorney Gregory J. Walsh appeared on behalf of Defendant Jacob Gatzlaff.  Defendant Tyler Havemeier appeared as a witness.  Defendant Nikki Blank did not appear.  State Farm and Gatzlaff filed proposed findings of facts and conclusions of law, along with briefing,

after the conclusion of the bench trial. The Court now issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

# FINDINGS OF FACT[1]

## I. Parties

1. Plaintiff State Farm Mutual Automobile Insurance Company is a mutual insurance corporation with its principal place of business in Bloomington, Illinois. (Dkt. 1 ¶ 1; Dkt. 6 ¶ 1.) At all times relevant, State Farm was licensed to transact business and issue policies of insurance in the state of Minnesota. (*Id.*)

2. At all times relevant, Defendant Tyler Havemeier ("Havemeier") was an individual citizen of the state of Minnesota, residing in Brown County. (Dkt. 1 ¶ 2; Dkt. 6 ¶ 1.)

3. At all times relevant, Defendant Nikki Blank ("Blank") was an individual citizen of the state of Minnesota, residing in Brown County. (Dkt. 1 ¶ 3; Dkt. 6 ¶ 1.)

4. At all times relevant, Defendant Jacob Gatzlaff ("Gatzlaff") was a citizen of the State of Minnesota residing in Brown County. (Dkt. 1 ¶ 4; Dkt. 6 ¶ 1.)

## II. June 27, 2016 Incident

### A. Driving to the Bar

5. On June 27, 2016, Havemeier drove Blank's 1992 Pontiac Grand Prix LE ("Grand Prix"). (Transcript (Dkt. 92) ("Tr.") at 9.)

---

[1] If the Court's Conclusions of Law reflect what may be considered Findings of Fact, they are incorporated herein by reference.

6. Havemeier was accompanied on June 27, 2016 by two individuals, Nicholas Goblirsch ("Goblirsch") and Parker Goldschmidt ("Goldschmidt") whom he drove in Blank's Grand Prix from her house in Sleepy Eye, Minnesota, to Outlaws Bar and Grill ("Bar") in Springfield, Minnesota. (Tr. 9-11, 17, 44-45.) The purpose of going to the Bar was to pick up Goldschmidt's girlfriend, Meghann Bergstrom. (Tr. 11, 13, 44, 76.)

7. Goblirsch and Goldschmidt were minors during the events at issue. (Tr. 11, 43, 75.)

**B.  Events Occurring Inside the Bar**

8. Upon arriving at the Bar, Havemeier ordered a beer, and purchased sodas for Goblirsch and Goldschmidt. (Tr. 12, 78, 79.)

9. Gatzlaff offered to buy Goblirsch and Goldschmidt alcoholic drinks. (Tr. 12, 31, 45-46, 78, 95-96.)

10. Havemeier became upset at this, and told Gatzlaff "Don't you dare because they are not old enough." (Tr. 12, 46, 78.) Havemeier became further upset at Gatzlaff because he kept antagonizing Havemeier and saying, "well, who is going to know, who is going to know," and Havemeier kept saying no. (Tr. 12.) Havemeier testified that Gatzlaff's actions "really pissed [him] off." (Tr. 13.) Havemeier was mad, at least in part, because Goblirsch and Goldschmidt were his sober drivers. (Tr. 21.) Gatzlaff and Havemeier had a verbal altercation, with unpleasant words exchanged. (Tr. 31-32, 113.) Havemeier became angry with Gatzlaff. (Tr. 79-80.)

11. At some point while they were at the bar, Havemeier, Goblirsch and Goldschmidt met up with Bergstrom and proceeded to leave the Bar. (Tr. 13, 80-81.)

12. Witness Eric Erickson testified that he had played in the same golf tournament as Gatzlaff on June 27, 2016 and was also at the Bar during the events at issue. (Tr. 111-12.) Erickson testified that by the time Gatzlaff had reached the Bar, it was clear that he had been consuming alcohol that day and that Gatzlaff was going around buying different people drinks. (Tr. 112.) At some point, Gatzlaff told Erickson that a group of individuals had told him to go away when he offered to buy them drinks, and as the group went to leave, Erickson tried to get Gatzlaff to just let the group go in order avoid a conflict, but Gatzlaff nevertheless followed the group out of the Bar shortly after they had left. (Tr. 113-15, 129.) After a moment of hesitation, Erickson decided to follow Gatzlaff in order make sure the situation did not escalate. (Tr. 115.)

C.  **Events Occurring in the Bar Parking Lot**

13. After they exited the Bar, Havemeier, Goblirsch, Goldschmidt, and Bergstrom all entered the Grand Prix, with Havemeier driving, Goblirsch in the right front passenger seat, and Goldschmidt in the backseat on the passenger side with his girlfriend on the driver side. (Tr. 13-14, 46, 81.)

14. Havemeier testified that as he was pulling away, at less than 10 miles per hour, Gatzlaff all of a sudden came out of the Bar, taking Havemeier by surprise, and that Gatzlaff ran towards the Grand Prix and hit the Grand Prix. (Tr. 14-17, 22-23.) Gatzlaff hit the passenger mirror hard enough to leave it hanging from the car (as opposed to being properly situated), although the mirror was not completely ripped off the car. (Tr.

4

16-17.) Havemeier also claimed he did not see Gatzlaff before he came in contact with the car, only that someone yelled "he's coming" and he swerved to the left. (Tr. 24-26.)

15. Havemeier testified that he had no intent to strike or harm Gatzlaff and asserted it was an accident. (Tr. 23-24.)

16. Goldschmidt testified that he was looking down at his cellphone as Havemeier was leaving the Bar and felt the vehicle accelerate with no braking, observed Gatzlaff rolling over the vehicle along the passenger side of the Grand Prix (cracking the windshield and breaking off the mirror), and that the Grand Prix then sped out of the Bar parking lot without stopping. (Tr. 48-51, 57-58.) He did not hear anyone saying "he is coming" before Gatzlaff was struck and he could not recall whether the Grand Prix jerked to the left or to the right. (Tr. 52, 64-65.)

17. Goblirsch testified that Havemeier backed up the Grand Prix out of the parking spot at the Bar, then, as they started to move forward, Gatzlaff came outside of the Bar and "put his hand by his groin area and did a jerking motion," and the car accelerated and Havemeier jerked the wheel to the right towards where Gatzlaff was standing, and hit Gatzlaff while his feet were stationary. (Tr. 81-84.) Goblirsch further testified that Gatzlaff then went over the right passenger side of the car, hitting the windshield and knocking off the mirror, Havemeier then jerked the car back to the left, and subsequently Havemeier pulled out of the parking lot. (Tr. 84-86, 98, 101-03, 106-07.) Goblirsch believed that if Havemeier had just went straight out of the parking lot, he would not have hit Gatzlaff. (Tr. 85.) Goblirsch also testified that Havemeier stated

5

"Don't fuck with me at the bar" as he left the Bar parking lot. (Tr. 87.) Goblirsch did not recall anyone telling Havemeier to leave the scene. (Tr. 87-88.)

18.     Based on what he observed and Havemeier's statement, Goblirsch believed that Havemeier intended to hit Gatzlaff, but also believed that it was impulsive and not planned while he was inside the Bar or as he was walking out to the vehicle. (Tr. 88-89, 98, 100-102.) He further testified that it was when Gatzlaff made his gesture that Havemeier jerked the car to the right and jerked it back to the left almost at the same time as the impact occurred. (Tr. 102-06.)

19.     Erickson testified that Gatzlaff was standing still about 10 to 15 feet away from the building outside as the group of people got into the vehicle, the car backed out normally, Gatzlaff then took two steps towards the vehicle stopping to salute with his drink as the vehicle was driving by normally, then the vehicle accelerated and swerved to the right towards Gatzlaff very quickly who was hit and landed on the hood of the car, and rolled off close to the passenger side mirror, the vehicle failed to stop, and turned onto Highway 14 towards Sleepy Eye accelerating rapidly. (Tr. 116-118, 120-21, 126-27, 130, 131; 132, 133, 135-36; Pl.'s Ex. 2, Bates No. JGATZ000323.) Erickson asserted that had the vehicle continued on its initial path once it pulled out the parking spot and stayed on that path, it would not have struck Gatzlaff. (Tr. 121.) Erickson also testified that he did not know if Havemeier knew if he intended to hit Gatzlaff, but that it appeared that he intended to swerve the vehicle to the right, and it did remind him of a "game of chicken that young guys do with cars, but unfortunately Mr. Gatzlaff was not quick

6

enough to move out of the way." (Tr. 120-21.) Erickson described what he meant by a "game of chicken" as follows:

> As a male growing up in the rural area, younger guys that age will do things like swerve towards someone they know and swerve back to force that individual outside the vehicle to jump out of the way; and if the individual doesn't, obviously there's a chance that they could get hit. And usually it's not an issue.

(Tr. 133.)

20. Gatzlaff was injured as the result of this incident. (Tr. 30-31, 117.)

### D. Events Occurring After Havemeier Left the Bar Parking Lot

21. After leaving the Bar parking lot, Havemeier headed back towards Sleepy Eye. (Tr. 88.) On his way back to Sleepy Eye, Havemeier stopped on a gravel road and had Goblirsch switch positions with him to drive the Grand Prix. (Tr. 18, 88.)

22. Havemeier testified he was criminally charged for the events of June 27, 2016 and that he pleaded guilty to second degree felony assault. (Tr. 18-20.) On December 10, 2016, Havemeier pleaded guilty to second degree assault pursuant to Minn. Stat. § 609.222, subd. 2 as part of an *Alford* plea. (Tr. 18-20; Pl. Ex. 7.)

### E. Insurance Coverage

23. At all times material, State Farm concedes that it insured the Grand Prix under a Car Policy Booklet (the "Policy"), which covered Nikki Blank and Tyler Havemeier. (Dkt. 1 ¶¶ 6-7; Dkt. 95 at 3 ¶ 11.)

24. Havemeier submitted a claim to State Farm seeking liability coverage under the Policy for Gatzlaff's personal injury claims resulting from the incident. (Dkt. 95 at 3 ¶ 13.)

25. State Farm concedes that Havemeier is an individual covered under the Policy, that Gatzlaff was injured on June 27, 2016, and that Havemeier is liable to Gatzlaff for causing those injuries. (Dkt. 95 at 3 ¶ 14.)

26. The parties agree that the Policy states "[w]e will pay: a. damages an *insured* becomes legally liable to pay because of: (1) *bodily injury*." (Dkt. 31-2 at 13.)

27. The parties also agree the Policy also contains the following exclusion: "THERE IS NO COVERAGE FOR AN *INSURED*: 1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY." (Dkt. 31-2 at 15.)

28. The issue before the Court is whether that exclusion applies in this instance.

## CONCLUSIONS OF LAW

**I.    JURISDICTION**

29. Jurisdiction in this Court is proper under federal diversity jurisdiction, 28 U.S.C. 1332, as the Plaintiff and Defendants are completely diverse in citizenship and the amount in controversy exceeds $75,000.

**II.   APPLICABILITY OF THE POLICY'S INTENTIONAL-ACT EXCLUSION**

**A.    Legal Standard**

30    Under Minnesota law, policy exclusions from insurance coverage "are construed narrowly and strictly against the insurer and, like coverage, in accordance with the expectations of the insured." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) (citations omitted); *see also Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012) (citation omitted) (applying Minnesota law).

31. The insurer bears the burden of proving that policy exclusions apply to bar coverage. *See Indep. Sch. Dist. No. 197 v. Accident & Cas. Ins. of Winterthur*, 525 N.W.2d 600, 608 (Minn. Ct. App. 1995), *rev. denied* (Minn. Apr. 27, 1995).

32. The Minnesota Supreme Court has defined "accident" as "an unexpected, unforeseen, or undesigned happening or consequence." *See Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 611 (Minn. 2001).

33. Accidental conduct and intentional conduct "are opposite sides of the same coin," and "where there is no intent to injure, the incident is an accident even if the conduct itself is intentional." *Id.* at 612.

34. The Minnesota Supreme Court has determined that, for purposes of the intentional-act exclusion found in most liability insurance policies, conduct is intentional only when there is specific intent to cause injury. *Id.* at 612-13.

35. However, a court may, absent evidence of specific intent to injure, infer intent to injure as a matter of law, based on the circumstances and nature of the insured's actions. *Id.* at 613 (citation omitted); *see also Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978) (citations omitted) (stating intent may be established by proof of actual intent to injure or when character of act is such that intent to inflict injury can be inferred).

36. "[T]he purpose of intentional act exclusions is to exclude insurance coverage for wanton and malicious acts by an insured." *Id.*

## C.   *Alford* Plea as Conclusive Proof of Intent to Injure

37.     State Farm argues in its closing argument (submitted in writing) that the admitted evidence that Havemeier entered an *Alford* guilty plea to Felony 2nd Degree Assault with a Deadly Weapon (the insured vehicle) pursuant to Minnesota Statutes section 609.222, subdivision 2, for his driving conduct on the night of June 27, 2016 is conclusive proof that Havemeier intended to injure Gatzlaff.  (Dkt. 99 at 3.)

38.     An *Alford* plea is a type of guilty plea containing a protestation of innocence when a defendant concludes that his interests require entry of a guilty plea and the record before the judge contains evidence of actual guilt.  *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).  The Minnesota Supreme Court implemented the Alford plea in *State v. Goulette*, 258 N.W.2d 758 (1977).

39.     For the same reasons as set forth in this Court's September 11, 2020 Order (Dkt. 50, Section III.A), which the Court incorporates into the present conclusions of law, the Court finds that Havemeier's *Alford* plea does not serve as conclusive proof that Havemeier intended to injure Gatzlaff.

## D.   Intent to Injure as Matter of Law[2]

40.     An inference of intent to injure may occur "when the insured acted in a calculated and remorseless manner **or** when the insured's actions were such that the

---

[2]     While State Farm also argues that there is adequate proof of Havemeier's specific intent to injure Gatzlaff, based on the testimony of Goblirsch (Dkt. 99 at 4), this is countered by Erickson's testimony that he was not sure that Havemeier intended to hit Gatzlaff or injure him, as it appeared to be a game of chicken gone awry.  As such, the Court will proceed to determine whether intent to injure can be inferred as a matter of law.

10

insured knew or should have known that a harm was substantially certain to result from the insured's conduct." *Walser*, 628 N.W.2d at 613 (emphasis added); *see also B.M.B. v. State Farm Fire & Cas. Co.*, 664 N.W.2d 817, 822 (Minn. 2003) (quotation marks and citation omitted) ("The general rule is that intent is inferred as a matter of law when the nature and circumstances of the insured's act are such that harm is substantially certain to result.") (cleaned up).

41. "The mere fact that the harm was a 'natural and probable consequence' of the insured's actions is not enough to infer intent to injure." *Walser*, 628 N.W.2d at 613 (quoting *Cont'l Western Ins. Co. v. Toal*, 244 N.W.2d 121, 124 (1976)).

42. There is no bright line rule as to when a court should infer intent to injure as a matter of law; rather, the determination is made through a "case by case factual inquiry." *Id.* (quoting *R.W. v. T.F.*, 528 N.W.2d 869, 873 (Minn. 1995)).

43. "[F]acts of particular importance are those tending to show the likelihood of the harm—the greater the likelihood of the harm occurring, the more reasonable it is to infer intent." *R.W.*, 528 N.W.2d at 873. Such a determination of inferred intent is "based on the circumstances and nature of the insured's actions." *Walser*, 628 N.W.2d at 613. Where the character of an insured's acts are factually "extreme", intent may be inferred as a matter of law for the purpose of an intentional act exclusion. *Id.* (citation omitted).

44. Courts generally do not infer intent to injure in situations involving horseplay or where the injuries were not foreseeable (and the conduct was not extreme), such as: when a group of teenagers engaged in "horseplay" during which they pulled at a friend's legs while he was hanging on a basketball hoop rim, causing him to let go of the

11

rim, which resulted in his injury, especially where the assailant teenager boys had themselves had hung on the rim and fallen without being injured in the past (*Walser*, 628 N.W.2d at 614-15); when an insured struck a baggage clerk after an argument and tug-of-war over a piece of luggage, noting that it was not extreme and possibly reflexive resulting from suffering a cut on the assailant's hand (*Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 824 (Minn. 1980)); where a boy caused a friend to trip or fall as part of horseplay in shop class (*RAM Mut. Ins. Co. v. Meyer*, 768 N.W.2d 399, 402-06 (Minn. Ct. App. 2009)); or where a daughter threw a refrigerator magnet at her father in anger as part of an argument (*Grinnell Mut. Reinsurance Co. v. Ehmke*, 664 N.W.2d 409, 411-13 (Minn. Ct. App. 2003)).

45. Examples of where the courts have inferred intent as a matter of law involved situations where an individual "acted with deliberate and calculated indifference to the risk of injury." *Id.* at 614.

46. Cases where intent to injure has been inferred by courts as a matter of law include fact patterns dealing with the use of dangerous instrumentalities of harm that are well known to the public such as: where the insured wrapped a belt around his hand as part of a heated fight with another teenager (*Stone*, 269 N.W.2d at 886-87); injuries resulting from reckless driving involving drinking, speeding, and evading the police (*Am. Fam. Mut. Ins. Co. v. Donaldson,* No. CIV. 12-2855 PAM/FLN, 2013 WL 6842023, at *3 (D. Minn. Dec. 27, 2013)); giving someone methamphetamine, even though there was no intent to kill (*State Farm Fire & Cas. Co. v. Schwich*, 749 N.W.2d 108, 113 (Minn. Ct. App. 2008)); where the insured had unprotected sexual intercourse even though he

knew or should have known that he had herpes (*R.W.*, 528 N.W.2d at 873); a stabbing, where a knife was brandished against an unarmed individual, even if it was only meant to scare someone away (*Illinois Farmers Ins. Co. v. Anderson*, No. A05-2400, 2006 WL 2348520, at *4-6 (Minn. Ct. App. Aug. 15, 2006)); and where the insured, attempting to scare his wife, intentionally fired a gun in her general direction and hit her when she unexpectedly moved into the path of the bullet at the last second (*Donovan v. Commercial Union Ins. Co.*, 493 N.W.2d 581, 583 (Minn. Ct. App. 1992)).

47. In this case, the instrumentality of Gatzlaff's injuries was Havemeier's use of a motor vehicle. "A car is an inherently dangerous instrument." *Am. Family Mut. Ins. Co. v. C.C. by & through Clobes*, No. CV 18-2342 (DWF/ECW), 2020 WL 2319853, at *5 (D. Minn. May 11, 2020) (quoting *Brown v. Am. Nat. Prop. & Cas. Co.*, Civ. No. A08-1208, 2009 WL 1119166, at *3 (Minn. Ct. App. Apr. 28, 2009)).

48. The Court finds credible the testimony of Goblirsch and Erickson that as the vehicle driven by Havemeier started to move forward in the Bar parking lot, Gatzlaff came out of the bar, made some sort of gesture, the vehicle then accelerated and Havemeier jerked the vehicle to the right towards Gatzlaff, hit Gatzlaff hard enough that he went over the right passenger side of the vehicle, hitting the windshield and knocking off the mirror, and then Havemeier pulled out of the parking lot leaving the scene without stopping. (Tr. 81-86, 88-89, 98, 101-03, 106-07, 116-118, 120-21, 126-27, 130, 131; 132, 133, 135-36.)

49. The Court also finds credible the testimony of Goblirsch and Erickson that Havemeier intended to swerve the car to the right towards Gatzlaff and that if Havemeier

had just driven straight out of the parking lot, he would not have hit Gatzlaff.  (Tr. 85, 88-89, 100, 120-121.)

50. The Court does not find credible Havemeier's testimony that Gatzlaff all of a sudden came out of the Bar, taking Havemeier by surprise, that Gatzlaff ran towards the vehicle and hit the vehicle, and that Havemeier only heard "he's coming" (Tr. 14-17, 22-23), as no other witness testified credibly consistent with this testimony.

51. Gatzlaff argues that at most Havemeier's actions were impulsive after Gatzlaff had raised his drink, were merely the result of a game of chicken gone awry, and the Court should not infer intent as matter of law on this basis.  (Dkt. 94 at 7; Dkt. 100 at 5.)  "[I]nstinctual, reflexive or otherwise involuntary actions do not evidence the malign animus that points to an intent to cause bodily injury."  *State Farm Fire & Cas. Co. v. Wicka*, 474 N.W.2d 324, 330 (Minn. 1991) (citations omitted).  This has included situations where an individual punched another individual who came at him yelling profanities (*Farmers Ins. Exch. v. Sipple*, 255 N.W.2d 373, 376-77 (Minn. 1977)); where the insured argued he acted reflexively when he struck a baggage clerk after a tug-of-war over some luggage caused a deep cut in the insured's finger (*Brown*, 293 N.W.2d at 824-25), when the insured was stopped from entering coat checkroom to grab his coat because he could not find his claim ticket and he reentered the checkroom pushing the plaintiff when she attempted to block his passage (*Caspersen v. Webber*, 298 Minn. 93, 95, 213 N.W.2d 327, 328 (1973)), and where a driver claimed to fear for his safety when he swerved at some teenagers (*State Farm Mut. Auto. Ins. Co. v. Rasmussen*, No. C6-01-440, 2001 WL 1530647, at *3 (Minn. Ct. App. Dec. 4, 2001)).  In such situations, intent

becomes a question for the trier of fact when the evidence suggests that the insured was not the master of his own will. *Wicka*, 474 N.W.2d at 330.

52. "[T]he insured's ability to choose the particular action is as much a part of the intent formulation as the insured's ability to appreciate the choice he has made." *Wicka*, 474 N.W.2d at 330. Courts have inferred intent to injure as a matter of law when a defendant voluntarily entered a dispute between a bartender and the defendant's friend and, after the plaintiff (a bar patron) pulled the defendant off the bartender and pushed him away from the scuffle, the defendant chose to escalate the violence by punching the plaintiff. *Smith v. Senst*, 313 N.W.2d 202, 203-04 (Minn. 1981).

53. In this case, there was no credible evidence that Havemeier feared for his safety, contrary to the insured in *Rasmussen*, and Goblirsch and Erickson both testified that Havemeier could have left the parking lot on his original course, unimpeded and without hitting Gatzlaff, even though he was in the parking lot. (Tr. 85, 88-89, 100, 120-121.) Nor was Havemeier's decision to swerve at Gatzlaff the result of some sort of reflex to physical threat such as in *Brown*, *Sipple* and *Caspersen*. Instead, the Court finds based on Goblirsch and Erickson's testimony that Havemeier's actions were more akin to the barroom fight in *Senst*, *supra*. Havemeier had been removed from the verbal altercation with Gatzlaff when he left the Bar, was in a motor vehicle when Gatzlaff gestured at him, and made a conscious decision to swerve and accelerate a mechanized vehicle at Gatzlaff in a small parking lot, hitting him so hard that he flew over the hood of the vehicle and broke the side mirror so it hung from the car, and took off saying "don't fuck with me at a bar." (Tr. 120-21.) Even though Erickson acknowledged that it

15

appeared that Havemeier was playing chicken with Gatzlaff, he also testified that "obviously there's a chance that [he] could get hit." (Tr. 133.)

54. A driver swerving and accelerating a vehicle at an unprotected pedestrian because the driver is angry at the person due to a previous verbal altercation in a bar is not an act conducted in self-defense, reflexive, or involuntary, and to find otherwise "would be inconsistent with the purpose of intentional injury exclusionary clauses, namely, to **prevent extending to the insured a license to commit wanton and malicious acts**." *Senst*, 313 N.W.2d at 204 (emphasis added).

55. The Court finds that State Farm has met its burden to show that intent to injure may be inferred as a matter of law. Even assuming that Havemeier was just trying to scare Gatzlaff, this situation is similar to that in *Donovan,* where that court inferred intent as a matter of law to injure when a husband tried to scare his wife by intentionally firing a gun in her general direction and hit her when she unexpectedly moved into the path of the bullet at the last second. *See Donovan,* 93 N.W.2d at 583. "Reckless or intentional misuse of a [of a dangerous instrumentality] creates an inherently dangerous situation. To hold that the exclusionary clause of the policy did not apply to the facts of this case would be, in effect, to extend to the insured a license to permit wanton and malicious acts." *Id.*; *see also Anderson,* 2006 WL 2348520, at *4.

56. This is not a situation, such as in *Walser*, that could be characterized as horseplay where serious injuries are not foreseeable. Swerving a vehicle at an unarmed person while accelerating, even if it was only to make him jump out of the way, is more akin to wanton conduct such as brandishing a knife at an unarmed individual as in

16

*Anderson*, *supra*.  Under such facts, a trier of fact could conclude that an insured knew "someone might well be injured or killed" and that the acts were "of such a calculated and remorseless character" that intent to injure should be inferred as a matter of law.  *See Walser*, 628 N.W.2d at 614 (citation omitted).  Indeed, this extreme conduct is of the type that intent may be inferred as a matter of law for the purpose of an intentional act exclusion.

57.     As a result, the Policy's intentional injury exclusion applies and Havemeier's claim for coverage is excluded.

## IV.     ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.     State Farm has no duty to defend and no duty to indemnify Tyler Havemeier[3] for the injuries sustained by Tyler Gatzlaff as the result of the June 27, 2016 incident.

2.     Pursuant to State Farm's representation at the pretrial conference on April 16, 2021, State Farm shall file a notice of dismissal with respect to Tyler Havemeier and Nikki Blank on or before **September 27, 2021**.


DATED: September 21, 2021                    *s/Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             United States Magistrate Judge

---

[3]     The Court notes that the Complaint only seeks an order declaring that State Farm has no duty to defend or indemnify Tyler Havemeier.  (Dkt. 1 at 4.)